# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1857, AT BOSTON.

———

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, }Justices.
Hon. BENJAMIN F. THOMAS,
Hon. PLINY MERRICK.

---

## Daniel H. Dearborn vs. Isaac Ames.

The *St.* of 1856, *c.* 284, entitled " an act in addition to the several acts for the relief of insolvent debtors, and the more equal distribution of their effects," and transferring to the courts of insolvency thereby established all the jurisdiction of commissioners " under and by virtue of the acts to which this is in addition," transfers the jurisdiction over insolvent corporations under the *St.* of 1851, *c.* 327, as well as that over insolvent debtors under the *St.* of 1838, *c.* 163, and the acts in addition thereto.

By the *St.* of 1856, c. 284, § 1, judges of insolvency are to be appointed by the governor and council, like other judicial officers.

The *St.* of 1856, *c.* 284, §§ 1, 2, 41, transferring all the jurisdiction of commissioners of insolvency to " courts of record, to be called courts of insolvency," with judges to be appointed by the governor and council, and to hold during good behavior, does not violate the nineteenth article of amendments of the Constitution of Massachusetts, which directs that " the legislature shall prescribe, by general law, for the election of commissioners of insolvency by the people of the several counties, for such term of office as the legislature shall prescribe."

PETITION under *St.* 1851, *c.* 327, § 16, by a creditor of the Boston Steam Engine Company, an insolvent corporation, to this court, sitting in equity, to order the respondent, (who had been appointed by the governor and council on the 20th of February 1855, a commissioner of insolvency for seven years, under *St.* 1848, *c.* 304; and also, on the 16th of June 1856, judge of insolvency for this county, under *St.* 1856, *c.* 284, to hold during good behavior;) to take cognizance of a petition for proceedings in insolvency, presented by said corporation to him as such commissioner, which he had dismissed for want of jurisdiction; and to restrain him from proceeding with a like petition presented by said corporation to him as judge of insolvency, upon which he had issued a warrant against their estate. The respondent and the said corporation had notice of the petition to this court.

*H. Gray, Jr.* (*F. E. Parker* with him,) for the petitioner.
I. The *St.* of 1856, *c.* 284, §§ 1, 2, 41, so far as it undertakes to establish "courts of record, to be called courts of insolvency," with judges to be appointed by the governor, and to hold during good behavior, and to transfer to such judges "all the jurisdiction, power and authority that commissioners of insolvency now have and exercise under and by virtue of the several acts to which this is in addition," is unconstitutional and void; especially if construed as transferring the jurisdiction over insolvent corporations as well as over insolvent debtors.

By the Constitution of Massachusetts "all judicial officers" are to be nominated and appointed by the governor, with the consent of the council; and, "excepting such concerning whom there is different provision made in this constitution," to hold their offices during good behavior. *c.* 2, § 1, art. 9; *c.* 3, art. 1.

The nineteenth article of amendment of the Constitution, ratified by the people on the 23d of May 1855, is in these words: "The legislature shall prescribe, by general law, for the election of sheriffs, registers of probate, commissioners of insolvency, and clerks of the courts, by the people of the several counties, and that district attorneys shall be chosen by the people of the several districts, for such term of office as the legislature shall prescribe." And provision for the election by the people of all the

officers named in this amendment has been made by *St.* 1856, *c.* 173. At the time of the adoption of this amendment, the only powers possessed by commissioners of insolvency were those over insolvent debtors, conferred by *St.* 1838, *c.* 163, and the acts in addition thereto ; and those over insolvent corporations, conferred by *St.* 1851, *c.* 327. The *St.* of 1855, *c.* 444, conferring on them certain powers as to the arrest of debtors on execution, did not take effect until afterwards, and cannot therefore influence the construction or operation of this amendment.

Commissioners of insolvency are not judicial officers, within the meaning of the Constitution. Their duties and powers are not judicial; but are substantially like those of masters in chancery, as to the estates of living insolvents, under *St.* 1838, *c.* 163, and of commissioners of insolvency upon the estates of deceased persons, under the Rev. Sts. *c.* 68. See Report of Commissioners, Cutler's Insolvent Law, (ed. 1853,) 155. By the terms of the statute creating the office, they were to hold for the term of seven years, unless sooner removed ; *St.* 1848, *c.* 304, § 1 ; and by the uniform practice under that statute, universally acquiesced in, they were removable at the pleasure of the governor, which they could not have been, (even when that tenure was expressed in their commissions,) had they been judicial officers. *Opinion of Justices*, 3 Cush. 585. *American Ins. Co.* v, *Canter*, 1 Pet. 546. They have been recognized by the courts as not being judicial officers. *Sims's case*, 7 Cush. 303. *Moses* v. *McDonald*, 21 Maine, 556. See also *People* v. *Mayor and Aldermen of New York*, 25 Wend. 12, 13. And they are associated, in the nineteenth amendment of the Constitution, with executive, administrative and ministerial officers only.

But if judicial officers, they are judicial officers, " concerning whom there is different provision made in this Constitution," namely, election by the people for a term to be prescribed by the legislature. *c.* 3, art. 1 ; amendments, art. 19.

In either view, the people, by the nineteenth amendment of the Constitution, describing these officers by a name which indicated their office, or, in other words, their duties—*officium*—the nature and extent of which were already clearly defined by law.

and generally understood, have expressed their determination themselves to elect the officers who should superintend the sequestering and distributing of the estates of insolvents, and to leave the tenure of such offices within the discretion of the legislature.

The officers called "judges of insolvency" in *St.* 1856, *c.* 284, are in truth " commissioners of insolvency," within the meaning of the nineteenth amendment. The only privileges, conferred by that statute upon the judges, which did not belong to commissioners, are to have a seal; to have an officer to wait upon them; to punish for contempt; to issue commissions to take testimony; and to award costs at discretion. §§ 6, 7, 8, 38. No other powers are given them, which did not previously belong to commissioners of insolvency, or other inferior officers. *Merriam* v. *Richards*, 3 Gray, 255. *Ex parte Gladhill*, 8 Met. 171. *Peabody* v. *Harmon*, 3 Gray, 113. *Chamberlain* v. *Hall*, 3 Gray, 250. *Briggs* v. *Wardwell*, 10 Mass. 358. Rev. Sts. *c.* 94, §§ 5, 6. *Sts.* 1838, c. 42; 1848, *c.* 304, § 3; 1846, *c.* 168, § 1; 1851, *c.* 327, § 23; 1856, *c.* 284, §§ 9, 10, 36. If the addition of these merely incidental powers and privileges will enable the legislature to transfer the duties of one officer, whose mode of appointment and tenure of office are prescribed by the Constitution, to another officer, appointed in a different manner, and holding by a different tenure, then the legislature, after depriving this court (which they have an undoubted right to do) of these incidental powers and privileges, might transfer the whole jurisdiction and power of this court to officers with a different name, elected by the people, or holding at the will of the legislature, and thus deprive the administration of justice of all the safeguards provided by the Constitution.

If this statute is constitutional, the whole of this amendment of the Constitution may at any time be practically nullified by the legislature, by providing that, as the officer who presides over sheriff's juries exercises judicial functions, he too must have a clerk, attending constable, &c., and be called a judge, and hold during good behavior, and the office of sheriff be abolished ; and by instituting in like manner a "judge advo-

cate" in the place of each district attorney, and a "recorder" (a judicial officer well known in some states) in the stead of each register and clerk.

The legislature have no constitutional power to take away from an officer, whose mode of appointment and tenure are prescribed, and his duties defined, at least by implication, in the Constitution, all, or even the greater part, of his powers and duties, and transfer them to an officer differently appointed, and holding by a different tenure. *Warner* v. *People*, 7 Hill, 82, and 2 Denio, 275, 281, 282. *People* v. *Mayor and Aldermen of New York*, 25 Wend. 17, 34. *Brien* v. *Commonwealth*, 5 Met. 515.

It is admitted that the legislature are authorized by the Constitution to distribute power and jurisdiction in their discretion among officers of the same constitutional class, even though the effect of their action be to abolish an office named in the Constitution. Such were the cases of the statutes abolishing the offices of attorney general and solicitor general, and transferring their duties to other Commonwealth's attorneys, holding by like appointment and tenure. *Sts.* 1820, *c.* 78; 1832, *c.* 130, §§ 8–12; 1843, *c.* 99. Rev. Sts. *c.* 13, §§ 28, 36, 42. But an amendment of the Constitution seems to have been considered necessary to authorize the election of those district attorneys by the people.

It is upon the same ground, that the cases of transfers of jurisdiction from one court to another, under the constitutional power to establish judicatories, must stand; such as the statutes transferring the jurisdiction of justices of the peace in Boston to the police court, of the municipal court of Boston to the court of common pleas, and of commissioners of highways to county commissioners. Constitution, *c.* 1, § 1, art. 3. *Wales* v. *Belcher*, 3 Pick. 508. *Brien* v. *Commonwealth*, 5 Met. 508. *Springfield* v. *Commissioners of Highways*, 6 Pick. 508. *Stuart* v. *Laird*, 1 Cranch, 309. But that cannot be done so as to affect a court or tribunal the jurisdiction of which is defined and limited by the Constitution. *Marbury* v. *Madison*, 1 Cranch, 174, 175. *Martin* v. *Hunter*, 1 Wheat. 330. *Cohens* v. *Virginia*, 6 Wheat. 400. By Taney, C. J., in 13 How. 53, *note*.

1 *

There is no doubt, also, that offices, the tenure of which is not fixed by the Constitution, may be abolished by the legislature, without giving the incumbent, at least, any right to complain. *Butler* v. *Pennsylvania,* 10 How. 402. *Taft* v. *Adams,* 3 Gray, 130. But the question here is not of the right of a particular incumbent to hold the office, but of the right of the people, (so long as the laws creating the office and its duties remain unrepealed,) to have the officer, whoever he may be, appointed and responsible in a particular manner, which they have declared.

II. If §§ 1, 2, 41, of *St.* 1856, *c.* 284, are constitutional and of any effect, they do not change the jurisdiction over insolvent corporations. The Rev. Sts. *c.* 2, § 6, *cl.* 13, only provide that "the word ' person ' may," (not " shall," as in other clauses in that section,) extend and be applied to corporations. The title may be referred to, to show the scope of a statute. *Stradling* v. *Morgan,* Plow. 203. *The King* v. *Gwenop,* 3 T. R. 137. *United States* v. *Palmer,* 3 Wheat. 631. This statute is entitled " an act in addition to the several acts for the relief of insolvent debtors and the more equal distribution of their effects " ; and purports to transfer to the judges of insolvency nothing but the jurisdiction, power and authority of commissioners of insolvency, " under and by virtue of the several acts to which this is in addition." This court decided, in 1847, that the words "insolvent debtors," in those acts, did not include corporations. *Sargent* v. *Webster,* 13 Met. 503. And the legislature, in using the same words since that decision, must be deemed to have adopted that judicial construction. *Commonwealth* v. *Hartnett,* 3 Gray, 450. The *St.* of 1851, *c.* 327, entitled " an act to secure the equal distribution of the property of insolvent corporations among their creditors," is not, in name or effect, one of those acts.

The *St.* of 1856, *c.* 284, does not mention or allude to insolvent corporations, nor contain any provisions especially applicable to them, although it does on almost every other branch of the insolvent law, including insolvent partnerships ; but on the contrary, contains provisions as to the debtor's certificate of discharge, and as to punishing by imprisonment fraudulent preferences as misdemeanors; which cannot be applied to corporations. *St.* 1856, *c.* 284, §§ 30, 31, 35.

Some reason for leaving the jurisdiction of insolvent corporations in the commissioners may perhaps be found in the fact that the *St.* of 1851 did not confer on commissioners, in the case of insolvent corporations, two of the most important powers exercised by them in the case of insolvent debtors, namely, the granting of a certificate of discharge; and the power to suspend proceedings, either on giving bonds to dissolve attachments, or with the consent of all persons interested. *Sts.* 1848, *c.* 304, § 13; 1851, *c.* 189, § 3; 1851, *c.* 327, §§ 16, 17. *Cheshire Iron Works* v. *Gay*, 3 Gray, 534. The powers belonging to commissioners of insolvency, in the case of corporations, are only, (1.) To issue a warrant for the attachment and sequestering of all the property of the corporation—which must be summary in order to be effectual, and is no greater than the power possessed by every creditor before the statute; *O'Neil* v. *Glover*, 5 Gray, 161; and such a warrant may be summarily superseded by the court, on the petition of any party aggrieved. *Sts.* 1838, *c.* 163, § 18; 1851, *c.* 327, § 16. *Thompson* v. *Snow*, 4 Cush. 121. (2.) To superintend the collection, and conversion into money, of the property of the corporation. (3.) To preside at meetings of creditors, and appoint a clerk. (4.) To hear proofs of claims against the estate, examine the creditors under oath, and allow their claims, subject to revision, on appeal, by a trial at common law—which are the same powers possessed by commissioners of insolvency appointed by the judge of probate on the estates of deceased persons, ever since 1790. *Sts.* 1784, *c.* 2; 1789, *c.* 50. Rev. Sts. *c.* 68.

But even if no reason for the separation of the jurisdiction is apparent, courts are bound by the words of the statute, when clear and unambiguous; and cannot, from considerations of policy, extend the meaning beyond the words. *Denn* v. *Reid* 10 Pet. 527. *Jones* v. *Smart*, 1 T. R. 52. *Brandling* v. *Barrington*, 6 B. & C. 475. Dwarris on Sts. (2d ed.) 583, 704.

An additional reason for adopting the construction contended for by the petitioner is, that it weakens the constitutional objection before suggested; although, as the *St.* of 1856, c. 284, even by this construction, undertakes to transfer to judges the greater

part of the duties of commissioners, that objection is not removed. *Warner* v. *People,* 7 Hill, 82, and 2 Denio, 275, 281, 282.

III. The *St.* of 1856, *c.* 284, § 1, may perhaps be held constitutional, and reconciled with *St.* 1856, *c.* 173, upon the following literal construction, which would show, however, that the respondent, having been appointed by the governor and council, and not by the people, has no authority over this case as judge.

That section provides that each judge of insolvency " shall be appointed, commissioned and qualified, in the manner prescribed by the Constitution," and "hold his office during good behavior." The general word "appointment" includes election by the people. U. S. Constitution, art. 1, § 6 ; art. 2, § 1 ; amendments, art. 12. Constitution of Mass. *c.* 2, § 1, art. 9 ; amendments, art. 4. *Commonwealth* v. *Sutherland,* 3 S. & R. 149, 150, 155. *Johnston* v. *Wilson,* 2 N. H. 202. " The manner [of appointment] prescribed by the Constitution " is election by the people, though the term of office is to be fixed by the legislature. Constitution of Mass. amendment 19 ; *ante,* 2, 3. That term of office, having been fixed, at first, by *St.* 1856, *c.* 173, § 1, at three years, was, before that statute took effect, extended to a tenure during good behavior, by *St.* 1856, *c.* 284, § 1. The acts of appointing and commissioning are distinct acts ; and a commission may well be required from the governor, for officers not appointed by himself. U. S. Constitution, art. 2, §§ 2, 3. *Marbury* v. *Madison,* 1 Cranch, 156.

The provision, at the end of *St.* 1856, *c.* 284, § 1, that, " as vacancies shall occur, the same shall be filled in the manner prescribed by the Constitution for appointing and commissioning judicial officers," applies only to a case of a vacancy occurring after the office has been once filled by the people. U. S. Constitution, art. 1, § 3 ; art. 2, § 2. 1 Story on U. S. Constitution, (2d ed.) § 727, *note.* 2 Story on U. S. Constitution, § 1559. Sergeant's Constitutional Law, 373. And an officer so appointed could hold only " until the annual election in November thereafter." *Sts.* 1856, *c.* 173, § 1 ; *c.* 284, § 1. The reason for mentioning "judicial officers" in the last clause of *St.* 1856, *c.* 284, § 1, is, that they were the first named and most impor

tant of the officers whose appointment was vested in the governor by the original Constitution; and the only ones there named, (unless perhaps coroners,) the appointment of whom remains in the governor since the amendments of 1855. Constitution of Mass. *c.* 2, § 1, art. 9; amendments, arts. 17, 19. And compare amendments, art. 4. If the original appointments of judges of insolvency were to be made in the same manner as appointments to fill vacancies, the insertion of a special provision as to the latter would be unprecedented and unnecessary.

*A. H. Fiske,* for the respondent.

SHAW, C. J. Two questions arise upon this petition : 1. Whether, by force of the *St.* of 1856, *c.* 284, the jurisdiction previously given by law to commissioners of insolvency, in cases of insolvent corporations, was in terms, or by necessary implication, transferred to and vested in the courts of insolvency thereby established. 2. If it was so transferred, whether that act itself is constitutional and valid, and has the force of law.

1. Upon the first question, the court are of opinion, that the cases of insolvent corporations, provided for by the statute of 1851, were intended by the statute of 1856 to be vested in the courts of insolvency, thereby established.

The object of the statute of 1856 seems to have been to introduce a system for the administration of this department of the law of debtor and creditors, somewhat more formal and specific, more symmetrical and conformable to the ordinary course of proceedings in courts of justice, than that which previously existed; and all the reasons which would appear to render such a change useful and beneficial in regard to the settlement and distribution of the estates of insolvent individuals, would apply with equal, if not greater, force to insolvent corporations, where large and complicated interests are often involved, and numerous persons, debtors and creditors, deeply interested in the proceedings. But in order to see whether i was included in terms, or by necessary implication, we must look to the act itself, and the state of the law as it then stood

It will be perceived that this act was passed about five years

after the act of 1851, embracing corporations in the insolvency system of the state, by which last act the jurisdiction in regard to corporations was vested in the same class of officers, who then had jurisdiction in case of individual insolvents. The modes of commencing proceedings are alike, being in certain cases voluntary on the part of debtors, and commenced by them, and in other cases adverse, and commenced by the creditors. The title of the statute of 1856 is, " An act in addition to the several acts for the relief of insolvent debtors, and the more equal distribution of their effects." When one act is intended to be a supplement or appendix to a particular previous act, the practice, we believe, is, to cite the previous act, to which it is intended as an addition, literally by its title ; and this is often designated by marks of quotation. Here is no such citation of title or marks of quotation ; but it refers to acts described rather than named, and described by the subject matter to which they relate, to wit, " the relief of insolvent debtors and the more equal distribution of their effects."

In general, the title of an act is not of itself much relied upon in the exposition of the statute itself. But in the present case, the same terms are used, in § 2, conferring jurisdiction on the courts of insolvency, thereby created, and also in the repealing clause. That section declares, that " said judges shall have all the jurisdiction, power and authority that commissioners of insolvency now have and exercise, under and by virtue of the several acts to which this is in addition ; and all the provisions in said acts contained shall apply in like manner to said judges respectively, as they apply to judges of probate, masters in chancery, and commissioners of insolvency, except so far as said provisions, or any of them, may be by this act modified or repealed."

In this clause, the words " the several acts to which this is in addition," are somewhat equivocal, and if there were any part or clause, showing an intent to limit its operation to the case of insolvent individuals, then the words in question might be so limited. But in the absence of any such limitation, we think it more consonant with the intention of the legislature, not to con-

strue these words to mean merely " the several acts for the relief of insolvent debtors, and the more equal distribution of their effects." All the provisions of this act are as well adapted to meet all the requisitions in cases of insolvent corporations, as of living insolvent individuals. The commencement, conduct and close of insolvent proceedings are, we believe, the same in both cases, with this exception, that no discharge is granted to cor porations as in case of individuals. But this is not a difference which would indicate the propriety of any difference of jurisdiction; on the contrary, if they are within the act, then the same provisions of law, which before applied to judges of probate, masters in chancery, or commissioners, shall apply to the courts of insolvency. The term " insolvent debtors," without restraint or qualification, must naturally be understood to include corporations, whether deemed a body politic constituting a person in law, or an aggregate term, embracing the individuals of which it is composed. Why the act of 1851 did not provide for the discharge of the debts of corporations, does not distinctly appear. One reason may be that the very result of insolvent proceedings would be either to pay their debts in full, and so render a discharge unnecessary, or wind up their concerns, and in effect put an end to their existence.

At the time this act was passed, that of 1851 had been in force several years, entitled, " An act to secure the equal distribution of the property of insolvent corporations among their creditors." Many of the provisions of that act are identical with the provisions of the insolvent laws in force when it passed, with particular provisions interspersed, adapted specially to the condition of corporations. Although it is not expressed in the title to be an act for the relief of corporations, perhaps because no discharge was provided for, yet it is well understood that the mere title to an act seldom embraces the whole object of an act, but it is exact enough, if it represents the leading purpose of the act, and is sufficient to identify it. The great and leading pur pose of all the insolvent acts is to effect an equal distribution of the property of insolvent debtors, whether individuals or corporations. The description of the previous acts might undoubtedly

have been more full and exact; and upon the literal interpretation of the statute, the question is not free from doubt. But the question here is, whether, by the terms which they have used, the legislature by fair intendment have included insolvent corporations; and we think they have. They were manifestly following out a system of policy, begun in 1838, and extended by various subsequent acts, that of securing an equal distribution of estates, when they were insolvent and insufficient to pay all creditors in full; and there is no clause or phrase in this last act, indicating an intention to make any distinction between insolvent individuals and insolvent corporations. The words, in the title of this act, to which the subsequent clauses in the act refer, to wit, "in addition to the several acts for the relief of insolvent debtors, and the more equal distribution of their effects," are broad enough to embrace all existing statutes on those subjects, if so intended.

The repealing clause, in the forty-first section of the act, does not, perhaps, add much weight to the conclusion we adopt, though wholly consistent with it. It repeals " so much of the several acts to which this is in addition," (using the same language as before,) " as gives jurisdiction to judges of probate, masters in chancery and commissioners of insolvency, and all other provisions in said several acts inconsistent with the provisions of this act." It brings us back to the same question, what were intended as the " several acts to which this is in addition," thus referring to them by their subjects, and not by their titles. Considering, as we do, that the legislature had in contemplation all the then existing laws of the Commonwealth, providing for the settlement of the estates of living insolvents, in a mode equitable and beneficial to all parties, intended to embrace all acts then in force, having this object in view, including the statute of 1851, making numerous and detailed provisions for the sequestration and distribution of the estates of insolvent corporations, both on their own application, and, in certain cases, on the application of their creditors, it is quite impossible to believe, that the legislature intended to exclude them ; and as the literal interpretation is not inconsistent with such intent, we must re-

gard it as the true interpretation, and hold that corporations were included.

2. The next question is, whether the act providing for the establishment of courts of insolvency, to exercise the same jurisdiction as that before exercised by commissioners of insolvency, with some alterations, is constitutional.

The doubt arises from this consideration; that, before the passing in June 1856 of the act constituting courts of insolvency, an amendment of the Constitution had been proposed and adopted by the legislature, and ratified in May 1855 by the people, in the manner provided for the amendment of the Constitution, (being now the nineteenth article of the amendments,) directing the legislature to prescribe, by general law, for the election of sheriffs, registers of probate, commissioners of insolvency, and clerks of the courts, by the people of the several counties, and that district attorneys should be chosen by the people of the several districts, for such term of office as the legislature should prescribe. The legislature had also passed an act on the 10th of May 1856, directing " commissioners of insolvency," with the other officers named, to be chosen by the people, to hold their offices three years. *St.* 1856, *c.* 173.

The argument is, that, as the Constitution had provided for the election of commissioners of insolvency, the act transferring their jurisdiction to courts of record, to be exercised by another class of officers, to be appointed by the governor and council, in the manner in which judicial officers in the original Constitution are required to be appointed, is in effect a mode of declaring that, under another title or description, commissioners of insolvency shall be appointed by the governor and council, and so is repugnant to the Constitution as thus amended. But we think this is not the character of the act in question.

By the original Constitution, *c.* 1, § 1, art. 3, " the general court shall forever have full power and authority to create and constitute judicatories and courts of record, or other courts, giving them jurisdiction over all matters criminal or civil."

The next provision in the Constitution, art. 4, gives full powers to the general court, to make all manner of wholesome

*Dearborn v. Ames.*

and reasonable orders, laws, statutes and ordinances, directions and instructions; and to name and settle annually, or provide by fixed laws for the naming and settling of all civil officers within the said commonwealth, the election and constitution of whom are not hereafter in this form of government otherwise provided for; and to set forth the several duties, power and limits of the several civil and military officers of this commonwealth.

These appear to us to be two distinct and separate powers, having distinct objects, each of which may have its full, fair and legitimate exercise, although such exercise of the one may in some respects interfere with arrangements made under the other. The power to erect courts and judicatories, coupled with an authority to define and limit the powers and duties of all civil officers, gives power to the legislature to fix and limit the jurisdiction of all such courts and judicatories. And we think it can be no just objection to the exercise of one of these powers thus expressly granted, that it may have the effect to transfer power, authority or jurisdiction from one class of judges or officers whose appointment in a particular mode is provided for in the Constitution, to another class whose appointment is left by the Constitution to be provided by law, or *vice versa*, when, in the judgment of the legislature, such change and distribution of powers will subserve the welfare of the public.

Under this power to erect judicatories, we think it has been the practice of the legislature, from the adoption of the Constitution, to erect and establish new judicatories, other than the supreme judicial court, to transfer jurisdiction from one court to another, in part or in whole, and to enlarge, restrain and regulate the jurisdiction of all courts. The changes which have taken place by law in the court of sessions are signal instances. Originally composed of all the justices of peace of the county, and invested with a considerable criminal jurisdiction; then composed of a small number of judges; afterwards its judicial powers transferred to the court of common pleas, and its administrative powers, first to commissioners of highways, then to county commissioners; and ultimately the entire abolition of the court of sessions itself. Similar changes have taken place, both

in the constitution and in the jurisdiction of the courts of common pleas, which are familiar to all those conversant with the legislation and jurisprudence of the Commonwealth. Yet, though the effect was to transfer jurisdiction from judges, the mode of whose appointment was directed by the Constitution, to officers otherwise appointed, in modes directed by law, we believe that those acts have never been considered as violations of the Constitution.

So in regard to the other power of the legislature, to provide for the appointment of all civil officers, where not otherwise provided in the Constitution. When the Constitution requires that certain officers, designated by titles, whose duties and powers are either prescribed by statute, or, being common law officers, are defined and limited by the rules of the common law, and who exercise the powers and duties, implied by law from the titles of such officers, shall be appointed or chosen in a particular manner, it is certainly not competent for the legislature to provide that officers, thus designated by the titles of the offices they hold, shall be chosen or appointed in any other way. But if the legislature, under the power vested in them, and judging that some or all of the powers vested by law in one class of officers, designated by these titles, may be more beneficially exercised by another and distinct class of officers, we think it is competent for the legislature to prescribe the mode in which such other class of offices shall be constituted.

Such an instance is found in case of the attorney general and solicitor general. These officers have powers and duties, prescribed and defined by the common law, and implied by their titles. The original Constitution provided that they should be appointed by the governor and council. But no solicitor general was appointed till twenty years after the adoption of the Constitution. But when the increase of business, especially in Maine, then part of Massachusetts, required such an office, a solicitor general was appointed. Again, after the separation of Maine it was found, or supposed, that both officers were not necessary, and it was provided by law, that when either office should become vacant, the powers of both should be exercised by the

occupant of the other.    Afterwards, both officers were super-seded, and the powers incident to both transferred to, and dis-tributed amongst local officers, each executing like power with the attorney general, within specified limits.    Now a provision is made, that the attorney general shall be chosen by the people, but no similar provision is made for a solicitor general.    Con-stitution, amendment 17.    We suppose, if the public exigencies should now require the reëstablishment both of an attorney general and solicitor general, the former must be elected by the people, and the latter appointed by the governor and council, simply because the Constitution has thus directed that these officers, thus designated by their titles, must be so ap-pointed.    Such results would follow, not because the two offices differ in their nature, but because the Constitution, as amended, thus directs.

Take another illustration.    When our Constitution was formed, the State had the entire control of the organization of the militia, though part of that power has been since transferred to congress.    There is a provision that major generals shall be chosen by the concurrent vote of the two houses of the legisla-ture.    *c.* 2, § 1, art. 10.    Now supposing that, in the progress of military science and practice, it should be found expedient to provide for the appointment of an officer of a higher grade, as lieutenant general, or field marshal; it would seem com-petent for the legislature to make such provision, and provide for the appointment of such officer, either by the legislature, by the governor and council, or by popular election, although most or all of the powers and functions of a major general would thus be transferred to another class of officers.

But there is another limitation upon the power of the legisla-ture, in regard to appointments, where the officer to be appointed is not designated by an established title, but by a definite de-scription of his functions.    As, for instance, all judicial officers shall be appointed by the governor and council.    Constitution *c.* 2, § 1, art. 9.    It may be often difficult to ascertain, in partic-ular instances, whether the office falls within the description, and whether the duties assigned to an officer make it a judicial

office or not. But this point being settled, the provision of the Constitution is as imperative and obligatory, as when an office is designated by a well known title.

The reasonable and practical exposition of the Constitution, in this respect, seems to us to be this: that where an office is already existing, or afterwards to be created by law, if it comes within a designation of an office mentioned in the Constitution by name, or by any term strictly synonymous, it must be filled in the manner provided by the Constitution. So if it falls within a class definitely described, as "judicial officers," the rule of the Constitution must be followed. But if the object of a statute is to establish a new judicatory, or a new arrangement of existing powers and duties of offices, created by such statute, either not designated in the Constitution by the title, or where such officer does not fall within a class specified in the Constitution by a definite description, it is competent for the legislature to provide the mode in which such officer shall be elected or appointed, although the effect and operation may be to transfer powers from officers elected under the provisions of the Constitution, to a class to be thus newly appointed.

As to this last point, the transfer of powers, perhaps an illustration may be drawn from the case of notaries public. They are a class of officers exercising a great variety of powers, some very indefinite, some of which are *quasi* judicial, and some merely executory. By the original Constitution, these officers were to be elected by both houses of the legislature in convention. Supposing, instead of changing the mode of appointment, by an alteration of the Constitution, which was done in 1820, the legislature had provided for transferring the *quasi* judicial powers of notaries public to certain designated courts of record; and those of an executory and miscellaneous character to mayors of cities, or justices of the peace—the object being to make a better provision for the exercise of the same functions—it appears to us that it would have been competent for the legislature to do so, although, when such officers, so designated by a title, were to be chosen, they must be chosen by the legislature.

Then, to consider this act in reference to these views of the

2 *

constitutional power of the legislature, it appears to us that the object of the legislature was to provide for the more efficient administration of a large department of the law in civil matters, affecting deeply the rights of debtors and creditors of all classes— a department which has grown from small beginnings to be a great system. As a necessary incident, it transferred the greater part, if not the entire jurisdiction of commissioners of insolvency to a court of record, with powers somewhat enlarged, and different in their mode of administration. It provided for a permanent judge with a fixed salary, to be appointed in the manner prescribed by the Constitution for the appointment of judicial officers, and to hold his office upon the like tenure ; and provided for a permanent clerk to keep and authenticate records. The same powers and jurisdiction had been changed by law, first vested in judges of probate, the mode of appointment of whom was fixed by the Constitution, and masters in chancery, whose offices were created by law, and held for a limited term ; then transferred to commissioners of insolvency, first appointed by the governor and council for a term of years, but afterwards, by an amendment of the Constitution, directed to be chosen by the people.

But this amendment of the Constitution did not confer, limit or define the powers or duties of commissioners of insolvency ; these were fixed and established by previous laws, then well known and understood. It provided that this class of officers, when to be appointed at all, should be elected by the people. It designated them by a well known title. But the powers which had previously been defined and conferred by law, could, we think, be modified, enlarged or diminished by law, notwithstanding a change in the mode of appointment.

It was suggested, in the argument, that the words " commissioners of insolvency " should be construed as words of description, and not as words of title, and so included any officers who may be charged with the administration of this department of this law. But it appears to us quite impossible so to construe them. The term had acquired a well known and definite meaning ; the law had provided for the appointment of officers of that

title; officers had been appointed and commissioned with that title; and the words seem to us to designate a title as much as that of justice of the peace, or notary public. The amendment of the Constitution did not, under the title of " commissioners of insolvency," intend any and all officers, who might in any mode be invested with the administration of the laws relative to insolvents, however they might be altered or modified; but to provide for a class of officers, designated by a familiar title, like " attorney general," " solicitor general," " district attorney," " county commissioner," and the like.

We have already alluded to the consideration, that, although the act transfers the jurisdiction from commissioners of insolvency to courts of insolvency, yet it is with some additional powers and functions. The judge is invested with a more permanent tenure, holding a court of record, (a higher grade than that before held by a commissioner,) with a compensation apparently designed to enable him to devote all his time and attention to the duties of such court. He has exclusive jurisdiction through the whole county, whereas several commissioners might before be appointed in each county, with concurrent jurisdiction. He is invested with larger powers, he may award costs in certain cases, and issue execution therefor, in like manner as practised in courts of common law. Taking all the provisions of the statute together, it seems designed to render the administration of this important department of the law more orderly and systematic, and more analogous to the regular course of legal proceedings in other tribunals.

We think the recent amendment of the Constitution, from the time of its ratification, is to be regarded as an integral part of the frame of government, and is to have the same force and effect as if it were a part of the original Constitution, and no greater, except that it abrogates all constitutional provisions inconsistent with it. So regarding it, we think it has been the frequent practice under the Constitution, to alter, change and transfer the duties and powers of tribunals and officers, judicial and others, although their appointment was provided for in terms by the Constitution, and, although at the time of their

appointment, and by force of such appointment, they were vested with powers and jurisdiction well defined, known and understood; and we believe that such jurisdiction has been altered, modified and transferred from time to time as the exigencies of the times and the public interests have seemed to the legislature to require, without being supposed to be in violation of the Constitution. In some cases, especially that of the attorney general and solicitor general, the offices themselves have been modified, abolished and reinstated. This practice under the Constitution affords some evidence of the contemporaneous and early construction in regard to the powers of the legislature, put upon the Constitution by its founders and early expounders.

On the whole, the court are of opinion that the statute in question was constitutional; that, at the time of the petition of the Boston Steam Engine Company to the respondent, he rightly took cognizance thereof as a judge of the court of insolvency, for the county of Suffolk; that he had no authority to take cognizance thereof in his capacity of commissioner of insolvency; and that the proceedings before him were regular.

*Petition dismissed.*

On the day of the delivery of the above opinion, the justices made the following answer to an order from the senate of the 16th of February last:

" To the Honorable the Senate of Massachusetts: The undersigned, justices of the supreme judicial court, in answer to the question proposed to them by the senate, by their order passed on the 16th February last, respectfully submit the following opinion:

" The question is thus stated: Is that portion of the act of 1856, *c.* 284, for the relief of insolvent debtors and the more equal distribution of their effects, which takes jurisdiction of that subject from commissioners and gives it to the court and judges, as therein provided, constitutional?

" As preliminary to the answer, we would repeat the obvious remark, so often made, that all reasonable presumptions are to

be made in favor of an act, passed under all the forms of legislation; and that no such act can be judicially declared invalid, as having exceeded the powers of the legislature, unless it appears manifestly repugnant to the express provisions or the established principles of the Constitution.

"Upon consideration of the question proposed, the undersigned are of opinion that the act of 1856, *c.* 284, providing for the establishment of courts of record in each county, to be held by judges, to be appointed in the manner prescribed in the Constitution for the appointment of judicial officers, and to hold their offices by a like tenure, each to hold sessions in his own county, with a permanent clerk, and transferring to those courts the duties, powers and jurisdiction in matters of insolvency previously exercised by commissioners of insolvency, with such additions and modifications, as are provided for in said act, was one which it was competent for the legislature to pass, and was not unconstitutional.

Boston, 26th March 1857.    LEMUEL SHAW,
CHARLES A. DEWEY,
THERON METCALF,
GEORGE T. BIGELOW,
PLINY MERRICK.

" I assent to the opinion expressed by the other justices, upon the single ground that the act is not so clearly unconstitutional, its invalidity so free from reasonable doubt, as to make it the duty of the judicial department, in view of the vast interests involved in the result, to declare it void.

BENJAMIN F. THOMAS."